**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **PERFORMANCE EQUIPMENT, LLC** <br> **AND CHARLES E. HUGHES** | **CIVIL ACTION** |
| **VERSUS** | |
| **MORBARK, INC. AND** <br> **JOHN DALE** | **NO. 07-110-C-M2** |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 10 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 10 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in chambers in Baton Rouge, Louisiana, October 22, 2008.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

PERFORMANCE EQUIPMENT, LLC                                        CIVIL ACTION
AND CHARLES E. HUGHES

VERSUS

MORBARK, INC. AND                                                 NO. 07-110-C-M2
JOHN DALE

## MAGISTRATE JUDGE'S REPORT

This matter is before the Court on the Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Federal Code of Civil Procedure Article 12(b)(2) (R. Doc. 24) filed by defendants, Angelo's Aggregate Materials, Ltd. and Angelo's Aggregate Materials, L.L.C. (collectively "Angelo's"). Plaintiffs, Performance Equipment, LLC and Charles E. Hughes (collectively "plaintiffs"), have not filed an opposition to this motion.

## FACTS & PROCEDURAL BACKGROUND

On September 12, 2006, plaintiffs filed the present suit in state court against defendants, Morbark, Inc. ("Morbark") and John Dale ("Dale"), alleging that they are liable for breach of contract, negligence, fraud, and breach of warranties relative to plaintiffs' purchase of a grinder to be used to conduct debris grinding operations in New Orleans, Louisiana, following Hurricane Katrina. According to the petition, defendant, Dale ("Dale"), a Morbark salesman and representative, assisted the plaintiffs in locating a used grinder for purchase.[1] Dale arranged for plaintiff, Charles E. Hughes ("Hughes"), to travel

---

[1] The petition also provides that, prior to locating the used grinder for purchase, Dale had induced plaintiffs to order, pay a deposit on, and await the delivery of a new grinder that was either not available and/or was not delivered as promised.

1

with him to the State of Florida to inspect a used grinder. Plaintiffs contend that, relying upon Dale's inspection and approval of the used grinder in Florida and his representation that the grinder was suitable and fit for the particular purposes intended and required by plaintiffs, the plaintiffs purchased the used grinder. Subsequent to the purchase, plaintiffs found that the grinder was unfit for the purpose intended, experienced persistent, continuing and damaging breakdowns and down time, required significant repairs and service, and did not perform as intended.

Following removal of the case to this Court, plaintiffs filed an amended complaint on December 5, 2007, naming Angelo's Aggregate Materials, Ltd. and Angelo's Aggregate Materials, L.L.C. as defendants. The amended complaint alleges that Angelo's is the owner of the used grinder in question and that both Dale and representatives and/or employees of Angelo's were engaged in collusion and self-dealing to effectuate the sale of the used grinder to the plaintiffs and that both knew or reasonably should have known of the existence of redhibitory and other defects in the grinder which rendered it unfit for its intended purpose or function. Plaintiffs therefore contend that Angelo's is liable to them for breach of contract, fraud, and breach of warranties.

Angelo's has now filed the present motion to dismiss for lack of personal jurisdiction. Specifically, Angelo's contends that it should be dismissed from this suit because it does not have sufficient minimum contacts with the State of Louisiana to justify the Court's exercise of general or specific personal jurisdiction. It further argues that the exercise of personal jurisdiction is not warranted under the "stream of commerce" theory. Finally, Angelo's contends that, even assuming it had minimum contacts with Louisiana, this Court should not exercise jurisdiction because it would not comport with "traditional

2

notions of fair play and substantial justice."

## LAW & ANALYSIS

I.  **Plaintiffs' failure to file an opposition:**

Local Rule 7.5M of the Middle District of Louisiana requires that memoranda in opposition to a motion be filed within twenty (20) days after service of the motion. The rule specifically provides:

> LR7.5M    Response and Memorandum
>
> Each respondent opposing a motion shall file a response, including opposing affidavits, memorandum, and such supporting documents as are then available, within 20 days after service of the motion. Memoranda shall contain a concise statement of the reasons in opposition to the motion, and a citation of authorities upon which the respondent relies. For good cause appearing therefor, a respondent may be required to file a response and supporting documents, including memoranda, within such shorter or longer period of time as the court may order, upon written ex parte motion served on all parties.

The present motion to dismiss was filed on August 7, 2008, and the Court's electronic filing system indicates that plaintiffs' counsel was electronically served with notice of the filing of the motion on that same date at 4:14 pm CDT. More than twenty (20) days have elapsed since the service of the motion, and plaintiffs have failed to file any opposition. The motion is therefore deemed to be unopposed. In addition to the motion being unopposed, the Court finds that the motion has merit and should be granted.

II. **Should Angelo's be subjected to the personal jurisdiction of this Court?**

Angelo's is a non-resident defendant organized under the laws of the State of Florida. *See*, Affidavit of Dominic Iafrate, Exhibit A to Angelo's motion. Thus, in

3

determining whether Angelo's present motion should be granted, the Court must examine whether the requirements for exercising personal jurisdiction over a non-resident defendant are satisfied in this case. Two preconditions generally must be satisfied in order for personal jurisdiction to exist over a nonresident defendant served out of state: (1) the nonresident must be amenable to service of process under the forum state's long-arm statute; and (2) the assertion of jurisdiction over the nonresident defendant must be consistent with the Fourteenth Amendment Due Process clause. *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061 (5th Cir. 1992). Because Louisiana's long-arm statute extends to the limits of due process, the Court need only determine whether subjecting Angelo's to personal jurisdiction in Louisiana would offend the Due Process Clause of the 14th Amendment. *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331 (5th Cir. 1999).

Due process is not offended if the nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'." *Dickson*, at 336, quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed.2d 528 (1985). When an action "arises out of" a defendant's contacts with the forum, a "relationship among the defendant, the forum, and the litigation" is the essential foundation of in personam jurisdiction. *Id.*, quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977). This type of jurisdiction, in which the suit arises out of or is related to the defendant's contacts with the forum, is commonly referred to as "specific jurisdiction." *Id.*, quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n. 8 104 S.Ct. 1868, 1872, n. 8, 80 L.Ed.2d 404 (1984). Additionally, there are

instances "in which the continuous corporate operations with a state [are] so substantial and of such a nature as to justify suit against [a foreign defendant] on causes of action arising from dealings entirely distinct from those activities." *Id.*, quoting *International Shoe*, 326 U.S. at 318, 66 S.Ct. At 159. When that situation prevails, enabling the state to exercise personal jurisdiction over a defendant in a suit not arising out of or not related to the defendant's contacts with the forum, the forum is said to have "general jurisdiction." *Id.*, citing *Helicopteros*, 466 U.S. at 414, n. 9, 104 S.Ct. At 1872, n. 9. Defendants can be subjected to general in personam jurisdiction if they have "continuous and systematic" contacts with the forum state. *Id.*, citing *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 445, 72 S.Ct. 413, 418, 96 L.Ed. 485 (1952).

**(A)      Does specific in personam jurisdiction exist over Angelo's?**

In support of its argument that personal jurisdiction does not exist over it in Louisiana, Angelo's has submitted the Affidavit of Dominic Iafrate, the Vice President of Angelo's. In that affidavit, Iafrate attests to the following facts: (1) Angelo's is a corporate entity engaged in the recycling business that is organized under the laws of Florida; (2) It purchased the grinder in question for use in its recycling business and desired to sell the grinder since it was no longer needed for its recycling business; (3) Angelo's is not a manufacturer or distributor of grinders; (4) Angelo's did not contact plaintiffs directly about the sale of the grinder but contacted Morbark representatives in Sarasota, Florida, to inquire whether Morbark knew of a potential buyer, in response to which Dale, who is from Texas, informed Angelo's that there was a potential buyer; (5) the grinder in question was located in Florida at the time the sale was being negotiated and remained in Florida until after plaintiffs purchased it; (6) the grinder was inspected by plaintiffs prior

5

to the purchase in Florida; (7) the plaintiffs agreed to purchase the grinder while in Florida; (8) after payment was received by Angelo's for the grinder, plaintiffs traveled to Florida to pick up the grinder; (9) no representative of Angelo's ever traveled to Louisiana during negotiations, nor did Angelo's deliver the equipment to Louisiana; (10) Angelo's is not registered to conduct business in Louisiana and has no Louisiana affiliates or subsidiaries; (11) Angelo's has no officers or agents in Louisiana; (12) Angelo's has no office or facilities in Louisiana; (13) Angelo's has no employees in Louisiana; (14) Angelo's has no telephone listing in Louisiana; (15) Angelo's has no bank accounts in Louisiana; (16) Angelo's has never sold, purchased, or leased property in Louisiana; (17) Angelo's has never advertised in Louisiana; (18) Angelo's has never conducted any sales or marketing activities in Louisiana; (19) Angelo's has never applied for a loan in Louisiana; and (20) Angelo's has never made any business purchases in Louisiana. *See*, Iafrate Affidavit, Exhibit "A" to Angelo's motion.

Based upon the above uncontested facts, the Court does not find that specific jurisdiction exists in this case. Since the grinder in question was, at all relevant times, located in Florida and the negotiations relating to the sale of the grinder, the inspection of the grinder, the actual sale of the grinder, and the delivery of the grinder all took place in Florida, the present suit does not "arise out of" any contacts of Angelo's with the State of Louisiana. The sole connection that this case has with the State of Louisiana is that the plaintiffs are residents of this State, and that connection alone is insufficient to establish specific jurisdiction. Furthermore, the mere fact that a nonresident defendant entered into a contract with a Louisiana resident does not establish the requisite minimum contacts necessary to support the exercise of personal jurisdiction over the nonresident

defendant. *Gundle Lining Const. Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201 (5th Cir. 1996). In order for a single act to support jurisdiction, that act must create a "substantial connection" with the forum. *Burger King*, at 477. Here, where the only established connection between Angelo's and the State of Louisiana is the single instance where Angelo's contracted with a Louisiana resident regarding the sale of a product, and the negotiations, inspection, sale, and delivery of that product did not even occur in this state, the connection is too "attenuated" or "isolated" to create specific personal jurisdiction over the nonresident defendant. *See, Burger King*, at 478, n. 18 ("The Court has noted, however, that "some single or occasional acts" related to the forum may not be sufficient to establish jurisdiction if "their nature and quality and the circumstances of their commission" create only an 'attenuated' affiliation with the forum").[2]

---

[2] The cases cited by Angelo's in its motion further support the Court's conclusion regarding specific jurisdiction. *See, Dickson Marine, Inc.*, at 337-338 (where it was held that a nonresident corporation's contract to coordinate repair of a vessel chartered by Louisiana residents did not give rise to sufficient minimum contacts with Louisiana to warrant the exercise of specific personal jurisdiction because the repairs created only limited contacts with Louisiana, were performed entirely outside of Louisiana, were negotiated outside of Louisiana, and were initiated by charterers); *Charia v. Cigarette Racing Team, Inc.*, 583 F.2d 184 (5th Cir. 1978)(holding that there were insufficient minimum contacts to justify the exercise of personal jurisdiction over a Florida boatbuilder in a suit brought by a boat purchaser for redhibition where the only contacts were the sale of the boat to the Louisiana resident, telephone negotiations, receipt of the purchaser's check drawn on a Louisiana bank, the sale by the defendant of boats to three other Louisiana residents, and delivery of the boat to the purchaser in Louisiana via common carrier, f.o.b. Florida (which was no different than if the plaintiff had picked up the boat himself outside of Louisiana because title and the risk of loss during transit passed to the plaintiff in Florida)); *Level 10 Promotions, LLC v. Wilkes-Barre Motors, Inc.*, 2008 WL 2781534 (E.D.La. 2008)(where the defendant entered into a sales promotion agreement with a Louisiana company that provided that the Louisiana company would develop advertising to be distributed in Pennsylvania, aimed at customers in Pennsylvania, to sell automobiles in Pennsylvania, and that provided for substantial performance of the contract in Pennsylvania. The defendant allegedly breached the contract, used the plaintiff's materials without authorization, and

**(B)     Does general in personam jurisdiction exist over Angelo's?**

It also does not appear that Angelo's has the "continuous and systematic" corporate operations within Louisiana that are substantial enough and of such a nature to justify haling it into court in this State.  *See, Shaffer v. Heitner*, 433 U.S. 186, 218, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985)(The Due Process clause requires that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign," and it "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to whether that conduct will and will not render them liable to suit").  The Fifth Circuit Court of Appeals has recognized that, where a nonresident company has no offices or facilities in the forum state, does not own any property in the forum state, has no employees living or working within the state, maintains no bank accounts, telephone listings, or other books or records in the state, pays no taxes in or to the state, and does not solicit or advertise for business in the state, that company does not have "substantial, systematic, or continuous contacts" justifying the exercise of general personal jurisdiction in the forum state.  *Doan v. Consumer Testing Laboratories (Far East) Ltd.*, 105 F.3d 654 (5th Cir. 1996).  Because Iafrate's affidavit establishes the above lack of contacts with the forum state relative to Angelo's, and plaintiffs have not

---

misrepresented its reasons for cancelling one sales event and for forcing the plaintiff to leave a second sales event early.  The Court held that, based upon the contacts and causes of action arising from the defendant's alleged conduct, the defendant should not have reasonably anticipated being haled into court in Louisiana, and personal jurisdiction therefore did not exist over the defendant in Louisiana).

presented any evidence to dispute such affidavit, general personal jurisdiction does not exist in this case.

### (C) Does personal jurisdiction exist under a "stream of commerce" theory?

The "stream of commerce" theory permits the exercise of personal jurisdiction over a nonresident defendant that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 273 (5th Cir. 2006). The foreseeability required is "not the mere likelihood that a product will find its way into the forum state. Rather it is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Id.*, quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The "stream of commerce" theory has been applied to companies that "purposefully serve markets broader than the state in which [their] initial or direct sales are made," and the Fifth Circuit has been reluctant to apply the principle outside the context of products liability cases, such as in contract or copyright cases. *Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374 (5th Cir. 2002). That is because contracting parties have more flexibility to tailor their relationship in view of jurisdictional considerations than do the manufacturer and consumer in a typical products liability case. *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 472-73 (5th Cir. 2006).

The Court does not find that the "stream of commerce" theory should be applied

9

in this contract case to impose jurisdiction. Angelo's is not a manufacturer or distributor of grinders, which purposefully markets grinders in other states, such that it would be reasonably foreseeable that the grinder in question could find its way into Louisiana. Instead, according to Iafrate's affidavit, Angelo's is in the business of recycling, and it purchased the grinder in question for use in its recycling business. When the grinder could no longer be used in its recycling business, Angelo's made an isolated sale of the grinder to a Louisiana resident through a contractual negotiation that occurred in Florida. The "stream of commerce" theory, which is principally applied in products liability cases where a manufacturer or distributor sells a product across state lines and that product subsequently causes injury in another state, simply does not apply to this scenario involving an isolated sale to a resident in another state. *See, Benjamin v. Western Boat Building Corp.*, 472 F.2d 723 (5th Cir.), *cert denied*, 414 U.S. 830, 94 S.Ct. 60, 38 L.Ed.2d 64 (1973)(where the Fifth Circuit declined to apply the "stream of commerce" theory on the ground that only an "isolated sale" was involved); *Tidewater Marine, Inc. v. Sanco Intern., Inc.*, 1998 WL 131738 (E.D.La. 1998)("Although the Fifth Circuit has applied the stream of commerce doctrine to justify its jurisdiction in some contractual disputes, it has refused to apply the doctrine when the contractual dispute is based upon an isolated sale").[3]

---

[3] *See also, Stuart v. Spademan*, 772 F.2d 1185 (5th Cir. 1985)(A nonresident defendant's random use of interstate commerce to negotiate and close a particular contract, its isolated shipment of goods to the forum at the instigation of the resident plaintiffs, and its mailing of payments to the forum did not constitute minimum contacts necessary to exercise jurisdiction over the defendant); *Loumar, Inc. v. Smith*, 698 F.2d 759 (5th Cir. 1983)(where the defendants in a breach of contract, deceptive trade practices, and fraud action did not reach out to the plaintiff in Texas for business, but instead, the plaintiff communicated by telephone with the defendants in Maryland about

**(D)    Does the exercise of personal jurisdiction over Angelo's offend "traditional notions of fair play and substantial justice"?**

Finally, even if it is assumed that Angelo's has the requisite minimum contacts with the State of Louisiana, the Court agrees with Angelo's that it would offend "traditional notions of fair play and substantial justice" if personal jurisdiction were exercised over it in this state.  To evaluate the fairness of exercising jurisdiction, the Court must consider: (1) the burden on the defendant; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the shared interest of the several states.  *Johnston v. Multidata Systems Intern. Corp.*, 523 F.3d 602, 615 (5th Cir. 2008).  "The relationship between the defendant and the forum must be such that it is reasonable to require the defendant to defend the particular suit which is brought there."  *Id.*, quoting *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 630 (5th Cir. 1999).

The burden upon Angelo's, a company which, according to the evidence presented, has no business or other contacts with Louisiana, other than the sale of the grinder in question to a Louisiana resident, would be greatly inconvenienced by having to defend against this suit in Louisiana.  Furthermore, since all of Angelo's negotiations

---

the possibility of supplying the items needed, the order was mailed to Maryland, the goods were shipped from Maryland, and payment was to be made there, and the defendants did not maintain any office, agent or place of business in Texas, the finding by the trial court that the defendant's shipping of the order to Texas was an isolated transaction insufficient to meet the minimum contact requirements of due process was not clearly erroneous); *Charia v. Cigarette Racing Team, Inc.*, 583 F.2d 184, 189 (5th Cir. 1978)(refusing to apply the stream of commerce theory on the ground that the defendant's four sporadic and isolated sales to residents of the forum state did not furnish the necessary minimum contacts with the forum state for the exercise of personal jurisdiction).

relating to the sale of the grinder, the execution of the contract of sale, and the delivery of the grinder occurred in Florida, the State of Louisiana has minimal interest in having this dispute against Angelo's adjudicated in this Court.  While the plaintiffs have an interest in having this case litigated in their home state, which is more convenient to them, that interest does not outweigh Angelo's strong interest in not being haled into court in a state with which it only has a single, isolated contact.  Finally, given that Louisiana's only connection with this suit is that the plaintiffs are residents of this state, the Court does not find that Louisiana has a particularized interest in having this isolated contractual dispute adjudicated in this state.[4]  Accordingly, because the exercise of personal jurisdiction over Angelo's would not comport with the "fairness" prong of the jurisdictional inquiry, personal jurisdiction cannot be exercised over Angelo's by this Court.

## **RECOMMENDATION**

For the above reasons, it is recommended that the Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Federal Code of Civil Procedure Article 12(b)(2) (R. Doc. 24) filed by defendants, Angelo's Aggregate Materials, Ltd. and Angelo's Aggregate Materials, L.L.C., be **GRANTED**, dismissing plaintiffs' claims against those defendants

---

[4] *See, Loumar*, at 764 ("In determining the limits of state exercise of jurisdiction over nonresidents, the ultimate criterion is fairness.  It would be manifestly unfair to force the [nonresident defendant] to come to Texas to litigate over the quality of the hub assemblies shipped from Maryland under the facts presented.  Trial on the merits would likely have consumed no more work than the travail dissipated in feckless squabbling about the forum in which the parties will eventually have their claim determined.  This waste results both from the efforts of a litigant to try its case in a forum closer to home and from the forum-shopping possibilities perpetuated by the portion of the federal diversity statute that permits a resident plaintiff to resort to a federal court merely for tactical advantage.  Such a resident has none of the justification of the nonresident who fears the home court advantage that might be accorded his resident adversary in a court of his own state").

with prejudice.

      Signed in chambers in Baton Rouge, Louisiana, October 22, 2008.

                                           **MAGISTRATE JUDGE CHRISTINE NOLAND**